**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| Santander Bank, N.A., <br><br> Plaintiff, <br><br> – against – <br><br> Branch Banking and Trust Company, <br><br> Defendant. | No. 1:17-cv-01669-YK <br> **(Judge Kane)** |

**SUR-REPLY MEMORANDUM IN OPPOSITION TO**
**BB&T'S MOTION FOR SUMMARY JUDGMENT**

Santander respectfully submits this Sur-Reply Memorandum in opposition to the Motion for Summary Judgment filed by BB&T.

## Introduction

BB&T's reply brief confirms that an issue of fact in this case is whether Graystone received the $16 million payment from GTI in good faith. On summary judgment, the Court's role is to assess whether this is a completely one-sided issue in favor of BB&T, or whether there is at least some evidence on both sides of this issue that should be considered and evaluated more carefully at trial.

On one side, BB&T has submitted affidavits and deposition testimony from several former Graystone executives stating, in effect, that they had no knowledge of Mr. Gaver's fraud. That evidence lends support to BB&T's contention that Graystone received the payment in good faith.

There is, however, another side of the issue. Santander has submitted evidence that Graystone was on notice of suspicious circumstances at GTI in the months leading up to the payment, and there is no evidence that Graystone did anything to investigate those suspicious circumstances. Courts have found that such evidence may be sufficient to preclude the good faith defense. *See In re Lockwood Auto Group, Inc.*, 428 B.R. 629 (Bankr. W.D. Pa. 2010); *In re Atomica Design Group, Inc.*, 556 B.R. 125, 173 (Bankr. E.D. Pa. 2016).

With evidence on both sides, the good faith issue cannot be viewed as an open-and-shut case in favor of BB&T. To the contrary, there is substantial evidence calling into question Graystone's good faith at the time of the payment. Accordingly, the Court should deny BB&T's Motion for Summary Judgment and reserve the factual issue of Graystone's good faith for trial.

### Argument

**I.    GRAYSTONE WAS ON NOTICE OF SUSPICIOUS CIRCUMSTANCES AND DID NOTHING TO INVESTIGATE.**

BB&T does not dispute the legal standard for good faith set forth in Santander's opposition brief. If Graystone was on notice of suspicious circumstances at GTI and failed to investigate, then the Court may find that Graystone did not receive the loan repayment in good faith. (Opp. 35-36.) Tellingly, BB&T does not dispute this standard in its reply brief. Under this standard, Santander does not have to prove that GTI was insolvent, or that

Graystone actually knew GTI was insolvent. It is enough to show notice of suspicious circumstances and a failure to investigate.

Santander has presented evidence of a number of suspicious circumstances known to Graystone, including:

- GTI initially had a pattern of making timely interest payments on the Graystone Loan. Beginning in December 2008, GTI's interest payments were increasingly late. (Opp. 36.)

- For the first two years of the Graystone Loan, GTI made active use of the General Account at Graystone. When the loan reached its limit in April 2009, activity in the General Account virtually ceased. (*Id.* 37.)

- GTI had a pattern of using its Payroll Account at Graystone to make bimonthly payments to GTI's payroll service. After April 2009, these payments ceased. (*Id.*)

- GTI's June 2009 interest payment was due on June 12, 2009 but was not paid until nearly a month later on July 10, 2009. (*Id.* 38.)

- In early July 2009, when Graystone inquired about the June interest payment, Mr. Gaver explained that GTI could not make the payment to Graystone because GTI was struggling to make payroll. (*Id.*)

- GTI did not pay the interest payments due in July or August 2009. These payments were only made when the Graystone Loan was paid off using the Santander Loan. (*Id.*)

- When Graystone inquired about the July 2009 interest payment in August 2009, Mr. Gaver did not give any assurance the payment would be made and, instead, told Graystone "do what you need to do." (*Id.*)

There is no evidence that Graystone did anything to investigate these suspicious circumstance.

In response, BB&T argues that the mere inability of GTI to pay its debts is not enough to prove insolvency. (BB&T Reply 7-8.) That argument misses the point. Santander does not have any burden to prove that GTI was insolvent. To defeat summary judgment, it is enough for Santander to show that Graystone was on notice of suspicious circumstances at GTI and that Graystone did nothing to investigate.[1] Here, Santander has presented evidence of a number of suspicious circumstances, including not only evidence of insolvency but also evidence that Mr. Gaver was not being truthful about GTI's financial condition. Rather than investigate these circumstances, Graystone stuck its proverbial head in the sand and hoped for the best. This falls short of good faith.

## II. COMPARISONS TO SANTANDER ARE NOT RELEVANT TO GRAYSTONE'S GOOD FAITH.

BB&T argues that Graystone must have taken the payment in good faith because "Santander knew what Graystone knew." (BB&T Reply 9; *see also id.* 2-5.) That argument muddles the legal standard applicable to the good faith defense. In connection with the good faith defense, Santander does not have an

---

[1] For this reason, the cases that BB&T cites—both of which are post-trial appellate decisions—are inapposite. Both cases address whether a party could rely on the "presumption of insolvency" to show insolvency under the Texas Uniform Fraudulent Transfer Act. *See Basley v. Adoni Holdings, LLC*, 373 S.W.3d 577, 584 (Tex. Ct. App. 2012); *Janvey v. Dillon-Gage, Incorporated*, 856 F.3d 377, 388 (5th Cir. 2017). However, Santander is not relying on the presumption of insolvency to show suspicious circumstances.

obligation to show that Graystone "could have discovered" Mr. Gaver's fraud. (That is the burden that Graystone must meet in connection with its statute of limitations defense.) To defeat summary judgment on the good faith defense, Santander need only show that Graystone was on notice of suspicious circumstances at GTI and that Graystone did nothing to investigate.

In addition, BB&T's argument that "Santander knew what Graystone knew" is not supported by the facts. For example, BB&T claims that an email that Mr. Gaver sent to Santander in March 2010 indicating that a payment might "bounce" is equivalent to an email Mr. Gaver sent to Graystone in August 2009 refusing to make an overdue interest payment and daring Graystone to "do what you need to do." (BB&T Reply 11.) However, the circumstances surrounding these two emails are completely different.

The "bounce" email to Santander arose in the context of an already approved increase to the Santander Loan. The only issue was when the increase would become available. Michael Postupak told Mr. Gaver that Santander was "processing the increase" and that he would know the next day whether "it will be in place and available for use." (BB&T SOF ¶ 58 and exhibits thereto.) Mr. Gaver wrote back: "Thanks Mike. I hope its effective tomorrow so my interest payment doesn't bounce. Let me know. I really appreciate your efforts." (*Id.*) In this

974865.1

response, Mr. Gaver is saying, at most, that a future interest payment *may* bounce depending on the availability of the increased credit.

The "do what you need to do" email to Graystone, on the other hand, was sent under very different circumstances. When the email was sent, GTI had exhausted its credit from Graystone, GTI's interest payment was already more than 30 days overdue, and GTI had been consistently late in making its interest payments for the preceding seven months. At that point, Graystone would have been well within its rights to declare the loan in default and/or to seek recourse from Mr. Gaver pursuant to his personal guarantee. (*See* Butler Decl. Ex. 2 at BB&T192_000185.) Mr. Gaver's response, however, did not offer any assurance that the interest payment would be made unless and until GTI closed on a new loan from a different bank. (Butler Dec. Ex. 23.) This brazen message from Mr. Gaver presented a far more serious situation than the "bounce" email to Santander the following year.

Other comparisons between Graystone and Santander are similarly flawed. Simply put, the suspicious circumstances known to Graystone by August 2009 were unique and unlike any circumstances known to Santander before the fraud was discovered in December 2016.

## Conclusion

For all the foregoing reasons, BB&T's Motion for Summary Judgment should be denied.

Dated: July 30, 2019

<div style="margin-left: 2em;">

By: /S/ THOMAS J. CAMPENNI
Robert D. Schaub (Pa. ID No. 42466)
Thomas J. Campenni (Pa. ID No. 87809)
Michael J. Sowinski, II (Pa. ID No. 312190)
ROSENN, JENKINS & GREENWALD, LLP
15 South Franklin Street
Wilkes-Barre, PA 18711-0075
(570) 826-5652 – telephone
(570) 706-3424 – facsimile
rschaub@rjglaw.com
tcampenni@rjglaw.com
msowinski@rjglaw.com

Jeff E. Butler (*pro hac vice*)
Benjamin A. Berringer (*pro hac vice*)
CLIFFORD CHANCE US LLP
31 West 52nd Street
New York, NY 10019
(212) 878-8000 – telephone
(212) 878-8375 – facsimile
jeff.butler@cliffordchance.com
benjamin.berringer@cliffordchance.com

*Attorneys for Santander Bank, N.A.*

</div>

974865.1