# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SANTANDER BANK, | * | Case No. 1:17-cv-01669-YK |
| Plaintiff, | * | |
| | | (Judge Kane) |
| v. | * | |
| BRANCH BANKING AND TRUST COMPANY, | * | |
| | | Filed Electronically |
| Defendant. | * | |

## SUR-SUR-REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Branch Banking and Trust Company ("BB&T") respectfully submits this Sur-Sur-Reply Memorandum in support of its Motion for Summary Judgment.

## The Procedural History

BB&T filed a Motion for Summary Judgment on May 31, 2019, asserting that it is entitled to summary judgment on the claims asserted against it by Santander Bank, N.A. ("Santander"). In the Memorandum In Support of Motion for Summary Judgment (the "Opening Brief"), BB&T argued that it is entitled to summary judgment because: (a) Santander's claims were extinguished by operation of 12 Pa.C.S.A. §5109(1) because Santander should have reasonably discovered the fraudulent nature of the August 27, 2009 transfer by Gaver Technologies, Inc. ("GTI") to BB&T's predecessor-by-merger, Graystone Bank

("Graystone") more than one year before September 17, 2017 when Santander filed suit against BB&T; (b) BB&T had a complete defense to Santander's claims under 12 Pa.C.S.A. §5108(a) because Graystone as a good faith transferee for value; or (c) both.

Santander filed a Memorandum of Law In Opposition to BB&T's Motion for Summary Judgment (the "Response Brief"), supported by a Declaration of its expert witness, Charles H. Grice ("Grice"). In that Declaration, Grice stated categorically that "ordinary bank due diligence *is not able to detect*" the kind of fraud perpetrated by GTI's President, Mark Gaver. Santander asserted that it could not have reasonably discovered GTI's fraud more than one year before it filed suit so that its claims against BB&T were not extinguished by operation of 12 Pa.C.S.A. §5109(1).

BB&T responded by filing its Reply Memorandum In Support of Motion for Summary Judgment (the "Reply Brief"). In the Reply Brief, BB&T argued that since: (a) all of the former Graystone officers directly responsible for administering Graystone's loan to GTI had submitted affidavits stating that they did not suspect fraud by GTI; and (b) Santander and Grice insisted that GTI's fraud could not reasonably be discovered, Graystone necessarily had to be a good faith transferee for value.

Over BB&T's objection, the Court granted Santander leave to file a Sur-

Reply Memorandum (the "Sur-Reply"). In the Sur-Reply, Santander argues, based on language from two bankruptcy court decisions, that the fact that Graystone did not have actual knowledge of GTI's fraud and could not have reasonably discovered that GTI was paying off its loan with intent to hinder, delay, or defraud Santander is not enough to establish that Graystone is a good faith transferee for value. According to Santander, "If Graystone was on notice of suspicious circumstances at GTI and failed to investigate, then the Court may find that Graystone did not receive the loan repayment in good faith." Sur-Reply, p. 2. In other words, Santander contends that even if a reasonable investigation would not have resulted in discovery that GTI was paying off its loan with intent to hinder, delay, or defraud Santander, *mere failure to conduct an investigation* deprives Graystone of good faith transferee status. Because whether an investigation would have revealed anything does not matter when no investigation is conducted and Santander's claims against BB&T are extinguished only if Santander should have reasonably discovered GTI's fraud, Santander asserts that comparisons of what Santander knew to what Graystone knew are not relevant to BB&T's good faith transferee for value defense. Sur-Reply, p. 4.

## Summary of Argument

As will be shown below, the duty of a transferee to investigate to be a good faith transferee within the meaning of 12 Pa.C.S.A. §5108(a) and the duty of a

plaintiff to investigate whether a transfer is fraudulent for purposes of determining when it must sue to avoid having its claims extinguished by operation of 12 Pa.C.S.A. §5109(1) are both triggered by the same "suspicious circumstances" test. Consequently, comparisons of what Graystone knew to what Santander knew are absolutely relevant. If both banks were on notice of the same circumstances, then if Graystone had a duty to investigate, Santander did too. If neither bank had a duty to investigate, since it is uncontroverted that Graystone did not have actual knowledge of GTI's fraud, Graystone is a good faith transferee.

Although the language from the two bankruptcy court decisions on which Santander relies appears on a superficial reading to support the proposition that failure of a transferee to investigate alone may deprive it of good faith transferee status, neither case holds that mere failure to investigate deprives a transferee of good faith transferee status when an investigation would not have resulted in discovery of the fraud. Higher courts than bankruptcy courts have concluded that failure of a transferee to investigate does not deprive the transferee of good faith transferee status unless the investigation, if conducted, would have uncovered the fraud. Since Santander and Grice are steadfast in their assertion that ordinary due diligence was not capable of detecting that GTI paid Graystone with intent to hinder, delay, or defraud Santander, the failure of Graystone to conduct an investigation does not deprive BB&T of a defense under 12 Pa.C.S.A. §5108(a).

**Plaintiffs and Transferees Have The Same Duty to Exercise
Reasonable Diligence Under the Uniform Fraudulent Transfer Act**

As authority for the proposition that Graystone cannot be a good faith transferee if it was on notice of "suspicious circumstances" and did not investigate Santander cites *In re Atomica Design Group, Inc.,* 556 B.R. 125 (Bankr. E.D. Pa. 2016) and *In re Lockwood Auto Group, Inc.,* 428 B.R. 629 (Bankr. W.D. Pa. 2010).  Sur-Reply, p. 2.  The *Atomica* court said "Therefore, the affirmative defense set forth in section 5108(b)(2) may be unavailable even where the transferee lacked 'actual knowledge' *that the original transfer was fraudulent* if it was 'on inquiry notice' of 'suspicious circumstances' that warranted 'a diligent investigation.'"  *In re Atomica Design Group, Inc.,* 556 B.R. at 173 (Emphasis added).  The court in *Lockwood* said that a "transfer can still be avoided as against the transferee if the circumstances were such that, as a reasonable person, it should have known that there was something suspicious *about the transfer* but failed to investigate."  *In re Lockwood Auto Group, Inc.,* 428 B.R. at 636 (Emphasis added).

The language from *Atomica* and *Lockwood* quoted above tracks virtually verbatim to the language that courts have used to described the duty that a plaintiff has to discover whether it has a cause of action under the same <u>Uniform Fraudulent Transfer Act </u>that was enacted in Pennsylvania and that governs this case, For example, in *KB Aircraft Acquisition, LLC v. Berry,* 790 S.E.2d 559 (N.C. Ct. App. 2016), the plaintiff alleged that a transfer of real property by the defendant was

avoidable under the Uniform Fraudulent Transfer Act as enacted in North Carolina.  790 S.E.2d at 561.  The defendant moved for summary judgment on the grounds that the plaintiff's claim had been extinguished by operation of North Carolina's counterpart to 12 Pa.C.S.A. §5109(1) and the motion was granted.  790 S.E.2d at 563.  In affirming the grant of summary judgment, the North Carolina Court of Appeals said:

> [A] plaintiff has a duty to exercise reasonable diligence to discover the fraud or misrepresentations that give rise to [its] claim." [Citation omitted]. [W]hen an event occurs *to excite the aggrieved party's suspicion* or put [it] on such inquiry as should have led, in the exercise of due diligence, to a discovery of the fraud,' " that party is deemed to have inquiry notice of the same

790 S.E.2d at 569-70 (Emphasis added); see also, *Janvey v. Romero*, 817 F.3d 184, 189 (5th Cir. 2016) ("Whether the plaintiff exercised reasonable diligence to discover a fraudulent transfer is relevant to determining whether a plaintiff could reasonably have discovered a fraudulent transfer").

Moreover, it is evident from a careful reading of the cases that the kinds of "suspicious circumstances" or "events that excite suspicion" that trigger the obligation of a transferee and a plaintiff to conduct due diligence are the same.  As the highlighted language in the quotes from *Atomica* and *Lockwood* above shows, the circumstances must relate to whether the transfer at issue was made with intent to hinder, delay, or defraud.  Additional passages from those cases reinforce that conclusion.

The *Atomica* court began the discussion that concluded with the language quoted above by noting that "The term 'good faith' is defined with respect to whether the transferee 'acted without actual fraudulent intent and ... did not collude with the debtor or otherwise actively participate *in the fraudulent scheme* of the debtor.'" *In re Atomica Design Group, Inc.,* 556 B.R. at 173 (Emphasis added). In addition to saying that the circumstances must cause a reasonable person to realize "that there was something suspicious *about the transfer,"* the *Lockwood* court said that "good faith is determined according to an objective or 'reasonable person' standard" and that "Courts thus look to what the transferee objectively knew or should have known concerning the nature of the underlying circumstances *involved with the transfer*." *In re Lockwood Auto Group, Inc.,* 428 B.R. at 636 (Emphasis added). Id. (Emphasis added). Read in context, it is clear that the duty of a transferee to investigate to preserve the good faith transferee defense arises only if circumstances are present that give the transferee reason to suspect that the transfer it is receiving is being made by the transferor with actual intent to hinder, delay, or defraud a creditor and that it fails to act in good faith only if a reasonable person should have known that the transfer at issue was fraudulent.

This interpretation of the decisions of the bankruptcy courts in *Atomica* and *Lockwood* is consistent with the interpretation of the good faith transferee for value defense by higher courts. For example, in granting summary judgment to a

transferee based on that defense, the United States District Court for the Northern District of Illinois said in *In re Equipment Acquisition Resources, Inc.,* 526 B.R. 710 (N.D. Ill. 2014), aff'd 803 F.3d 835 (7th Cir. 2015), that a "transferee does not have 'a duty to investigate, to be a monitor for creditors' benefit when nothing known so far *suggests that there is a fraudulent conveyance in the chain*.'" 526 B.R. at 709 (Emphasis added).  In support of that statement, the *Equipment Acquisition* court cited the Seventh Circuit's decision in *Bonded Financial Services, Inc. v. European American Bank,* 838 F.2d 890 (7th Cir. 1988).

In *Bonded Financial Services*, the Seventh Circuit affirmed a bankruptcy court's grant of summary judgment to a transferee based on the good faith transferee defense in an action in which a bankruptcy trustee alleged that a debtor's loan repayment was a fraudulent conveyance. 838 F.2d at 891-92. In so doing the Seventh Circuit acknowledged that "Some facts strongly suggest the presence of others; a recipient that closes its eyes to the remaining facts may not deny knowledge." 838 F.2d at 898. Nevertheless, the Seventh Circuit went on to say that "A transferee that lacks the information necessary to support an inference of knowledge need not start investigating on his own." Id.

Santander itself recognized in the Response Brief that an obligation of a transferee arises only if the transferee knows something that puts it on inquiry notice that the transfer is fraudulent. Santander cited *Carroll v. Stettler,* 941

F.Supp.2d 395 (E.D. Pa. 2013) for the proposition that, "To assess good faith, courts analyze 'whether the [transferee] has sufficient knowledge to place it on inquiry notice of the *voidability of the transfer.*'" Response Brief, p. 35 (Emphasis added).

Since whether Santander's claims were extinguished before it filed suit depends on when it should have reasonably discovered that GTI paid Graystone with intent to hinder, delay, or defraud it, circumstances that would place Santander on notice of the voidability of the transfer are the same circumstances that would trigger its "duty to exercise reasonable diligence to discover the fraud or misrepresentations that give rise to [its] claim." Consequently, if both Graystone and Santander were on notice of the same circumstances and Graystone had a duty to investigate to preserve the ability to be a good faith transferee, then Santander also had a duty to investigate whether it has a cause of action under the <u>Uniform Fraudulent Transfer Act</u> to avoid GTI's payment to Graystone.

**<u>Graystone and Santander Were On Notice of the Same Circumstances</u>**

Santander asserts that the "suspicious circumstances" that triggered Graystone's obligation to investigate are that: (a) GTI was late in making loan payments to Graystone in the last few months before it paid off that loan; and (b) GTI's deposit account activity, particularly disbursements to pay payroll, fell off in that same time period. Response Brief, pp. 36-37; Sur-Reply, pp. 2-4. However,

as BB&T documented in the Reply Brief, before GTI became late in making loan payments, GTI told Graystone that it could not afford to make loan payments and pay operating expenses unless Graystone lent GTI more money. Reply Brief, pp. 9-10. Less than one year into Santander's loan relationship with GTI, GTI also told Santander that GTI's loan payment would bounce if an increase in the amount of GTI's line of credit was not in place in time. Reply Brief, p. 11. Thus, both banks knew that, despite claiming to have hundreds of thousands of dollars of annual revenues and being profitable, GTI could not both make loan payments when due and pay operating expenses without borrowing more money. If that constituted a circumstance that put Graystone on notice that GTI paid off its loan with actual intent to hinder, delay, or defraud Santander, then Santander was also on notice of that well more than one year before it sued BB&T.

As documented in both the Reply Brief and in the Opening Brief, GTI went for months at a time without depositing any funds to its initial deposit account with Santander, the deposits to GTI's deposit accounts at Santander were never commensurate with its supposed revenues, and GTI's disbursements from its Santander accounts to pay payroll expenses were paltry in comparison to what they would have been if GTI had anything approaching the number of employees that it claimed to have. Opening Brief, pp 16-19; 21; 23-24; 26-27; 31; 34; Reply Brief, p. 9. Thus, if the drop off in GTI's deposit account activity with Graystone in the

few months preceding GTI's refinancing of Graystone's loan constituted a circumstance that put Graystone on notice that GTI paid off its loan with actual intent to hinder, delay, or defraud Santander, then Santander was also on notice of that well more than one year before it sued BB&T.

### A Transferee Does Not Have to Conduct a Pointless Investigation to Preserve a Good Faith Transferee for Value Defense

Santander, of course, contends that the fact that both Santander and Graystone had the same duty to investigate does not entitle BB&T to summary judgment because BB&T needs to prove that a reasonable investigation by Santander would have resulted in discovery of GTI's fraud more than one year before Santander sued BB&T while Graystone's failure to investigate, by itself, defeats the good faith transferee defense. That an investigation by Graystone would not have resulted in discovery of the fraud does not matter.

Santander's position is illogical and defies common sense. According to Santander and Grice, had Graystone investigated, it would not have discovered GTI's fraud. However, because Graystone did not conduct the investigation that would not have resulted in discovery of GTI's fraud, BB&T has no defense under 12 Pa.C.S.A. §5108(a).

There are instances in which the law dictates that failure to fulfill a strict technical requirement mandates a ruling against a party on an important substantive claim or defense. However, that is not the case here.

The United States Court of Appeals for the Seventh Circuit addressed the effect of inquiry notice on a transferee's ability to assert a good faith transferee defense in *In re Equipment Acquisition Resources, Inc.*, 803 F.3d 835 (7th Cir. 2015). In *Equipment Acquisition,* the Seventh Circuit affirmed the bankruptcy court's grant of summary judgment to a transferee on the basis of the good faith transferee defense which had been affirmed by the United States District Court for the Northern District of Illinois. The Seventh Circuit expressly rejected the unsuccessful plaintiff's request "to adopt a standard of good faith distinct from without knowledge." 803 F.3d at 842. The Seventh Circuit said plainly that:

> [I]nquiry notice *must be sufficient to enable the party to have gained actual knowledge by inquiring*. If a reasonable inquiry would not have led to actual knowledge of voidability, a court cannot impute knowledge.

803 F.3d at 840 (Emphasis added). Thus, mere failure to investigate does not deprive a transferee of good faith status. Only a failure to conduct an investigations that would have resulted in discovery that the transfer was fraudulent deprives a transferee of the good faith transferee for value defense.

Although there is language in *Atomica, Lockwood,* and other cases suggesting that mere failure of a transferee to investigate is enough to deprive the transferee of a defense under 12 Pa.C.S.A. §5108(a) when an investigation would not have resulted in discovery of fraud, neither case so holds. The court in *Atomica* was ruling on a motion to dismiss a complaint filed by a trustee to avoid

an alleged fraudulent conveyance. *In re Atomica Design Group, Inc.,* 556 B.R. at 136.  Regardless of the language that it used, all that the court determined was that it could not tell solely from the face of the trustee's complaint that the defendant was a good faith transferee.  More importantly, the *Atomica* court said that "the affirmative defense set forth in section 5108(b)(2) <u>may</u> be unavailable even where the transferee lacked 'actual knowledge' that the original transfer was fraudulent if it was 'on inquiry notice' of 'suspicious circumstances' that warranted 'a diligent investigation.'"  *In re Atomica Design Group, Inc.,* 556 B.R. at 173 (Emphasis added), not that the defense is unavailable if the transferee fails to investigate.

*Lockwood* was decided in the context of a motion for summary judgment by a transferee.  *In re Lockwood Auto Group, Inc.,* 428 B.R. at 632.  However, there is no indication that the party opposing summary judgment asserted, as Santander does here, that an investigation by the transferee would not have resulted in discovery that the transfer at issue was fraudulent.  Moreover, the plaintiff had not taken the deposition of the transferee's officer.  *In re Lockwood Auto Group, Inc.,* 428 B.R. at 634.  Consequently, the court had no basis for reaching a conclusion as to whether an investigation by the transferee would have resulted in discovery of facts that would have made the transferee a "participant in the fraudulent scheme" so that the transferee was deprived of good faith transferee status

Here, Santander and Grice contend forcefully that an investigation would

have turned up nothing pertinent to voidability. If it would have, then Santander would have reasonably discovered GTI's fraud more than one year before Santander filed suit.

## Conclusion

Santander's attempt to avoid summary judgment by constructing an interpretation of fraudulent conveyance law under which a transferee's mere failure to investigate an undetectable fraud deprives the transferee if the good faith transferee for value defense fails. A transferee has no duty to investigate unless it is on notice of facts from which a reasonable person would suspect that the transferor might be making a transfer with actual intent to hinder, delay, or defraud creditors. Even when a transferee is on notice of such facts, failure to investigate does not deprive the transferee of the good faith transferee defense if an investigation would not have uncovered the fraud.

Since Graystone and Santander were on notice that GTI could not make loan payments and pay operating expenses unless they lent GTI more money and that deposit account activity did not mesh with GTI's supposed revenues and Santander was on notice of that as early as 2010, if Graystone had a duty to investigate, then Santander should have reasonably discovered the fraudulent nature of GTI's transfer more than one year before Santander sued BB&T. In that event, BB&T is entitled to summary judgment under 12 Pa.C.S.A. §5109(1).

If Santander was not on notice of GTI's fraud so that it can withstand summary judgment under 12 Pa.C.S.A. §5109(1), then Graystone had no duty to investigate. Moreover, as Santander and Grice maintain that ordinary due diligence was not capable of detecting GTI's fraud, then since it is undisputed that Graystone had no actual knowledge of GTI's fraud, BB&T is entitled to summary judgment under 12 Pa.C.S.A. §5108(a) in any event.

What Graystone and Santander knew either put them on notice of GTI's fraud, in which event Santander's claims were extinguished before it sued BB&T or it did not out them on notice, in which event Graystone was a good faith transferee for value. In either event, BB&T's motion for summary judgment must be granted.

Dated:  August 19, 2019        */s/ William L. Hallam*
　　　　　　　　　　　　　　　William L. Hallam, Pa. ID No. 85647
　　　　　　　　　　　　　　　Joshua D. Bradley, Pa. ID No. 313308
　　　　　　　　　　　　　　　Rosenberg Martin Greenberg, LLP
　　　　　　　　　　　　　　　25 South Charles Street, Suite 2115
　　　　　　　　　　　　　　　Baltimore, Maryland 21201
　　　　　　　　　　　　　　　Phone: (410) 727-6600
　　　　　　　　　　　　　　　Fax: (410) 727-1115
　　　　　　　　　　　　　　　whallam@rosenbergmartin.com
　　　　　　　　　　　　　　　jbradley@rosenbergmartin.com

　　　　　　　　　　　　　　　*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 19th day of August, 2019, a copy of the foregoing Sur-Sur-Reply Memorandum in Support of Motion for Summary Judgment was served through the CM/ECF System on counsel of record.

/s/ *William L. Hallam*
William L. Hallam

4829-0032-1696, v. 2